UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSHU OSMANSKI                                      CIVIL ACTION

VERSUS                                             NO. 26-147

JPMORGAN CHASE BANK, N.A. ET AL.                   SECTION "A" (3)

### ORDER AND REASONS

The following motions are before the Court: **Motion to Compel Arbitration and Stay Lawsuit (R. Doc. 21)** filed by J.P. Morgan Securities LLC ("JPMS"); and **Motion to Stay Lawsuit Pending Arbitration (R. Doc. 22)** filed by JPMorgan Chase Bank, N.A. ("Chase Bank"). Plaintiff Joshu Osmanski, who is proceeding pro se, opposes the Motion to Compel Arbitration (R. Doc. 21) but did not file an opposition to Chase Bank's Motion to Stay Lawsuit (R. Doc. 22).[1] The motions are before the Court on the briefs without oral argument. For the following reasons, the motions are **GRANTED.**

### I.  Background

The underlying dispute arose in 2023 when Osmanski sought bridge financing for his commercial property.[2] Osmanski held multiple accounts with Defendants and was assigned Sean Vappie as his Private Client Banker.[3] Osmanski alleges that Vappie, appearing in his official capacity as a bank employee, leveraged his position of trust to facilitate a fraudulent "selling away" scheme.[4] Specifically, Osmanski claims that Vappie induced him to engage with a third party,

---

[1] Instead of responding to Chase Bank's Motion to Stay, Osmanski has filed a "Memorandum in Opposition to Defendant JPMorgan Chase Bank's Motion to Dismiss" (R. Doc. 23). Osmanski appears to be responding to Chase Bank's earlier Motion to Dismiss Plaintiff's Original Complaint (R. Doc. 10), which the Court had previously denied as moot (R. Doc. 15).

[2] R. Doc. 1, Complaint, ¶ 7

[3] R. Doc. 11, First Amended Complaint, ¶ 9.

[4] *Id.* ¶ 11.

Natasha Gaudin, for the purported purpose of investment-related fees and capital management.[5] Based on Vappie's professional recommendation, Osmanski liquidated funds and transferred approximately $17,500, which was then allegedly misappropriated.[6]

When Osmanski opened his two brokerage accounts with JPMS, he executed two separate account applications. Each account application incorporates the terms of JPMS's Investment Account Agreements and Disclosures Booklet. Osmanski expressly agreed in writing to these agreements, which contained the following arbitration clause:

> **a. The Booklet contains a pre-dispute arbitration clause. By signing the Application and agreeing to the Booklet, which applies to any JPMS accounts you open now or in the future, you and JPMS (the parties) agree as follows:**
> **1. All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**
> **\* \* \***
> **c. You agree that all controversies arising under or relating to this Agreement or any activity between you or JPMS and its principals, agents or affiliates, its predecessors and any of its respective successors, assigns, and any of its directors, employees, and any other control persons and any of their agents regarding your Account(s) including, but not limited to, orders, transactions, performance or breach of other agreements between the parties shall be resolved through arbitration. This arbitration agreement extends to any agreements and activities performed before and after the opening of your Account(s) […]**[7] (bold in original)

This arbitration clause is contained in both account applications signed by Osmanski.

## II.    Law and Analysis

A two-step analysis is applied to determine whether a party may be compelled to arbitrate a

---

[5] *Id.* ¶ 12.
[6] *Id.* ¶ 13.
[7] R. Doc. 21-7, Investment Account Agreements and Disclosures Booklet, ¶ 27.

claim. *Sherer v. Green Tree Serv., LLC*, 548 F.3d 379, 381 (5th Cir. 2008) (citing *JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007)). The first inquiry is whether the party has agreed to arbitrate the dispute. *Id.* If so, then the second inquiry is whether any federal statute or policy renders the claim nonarbitrable.[8] *Id.*

The first inquiry itself contains two questions: 1) is there a valid agreement to arbitrate between the parties, and 2) does the dispute fall within the scope of the arbitration agreement? *Id.*; *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (citing *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003)). Courts apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope but not when determining whether a valid arbitration agreement exists. *Sherer,* 548 F.3d at 381 (citing *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073-74 & n.5 (5th Cir. 2002)). The question whether an agreement to arbitrate exists is determined by ordinary state law contract formation principles. *Will-Drill*, 352 F.3d at 214 (citing *Fleetwood*, 280 F.3d at 1073).

Osmanski does not dispute that on February 17, 2023, he signed the account applications that contained the arbitration clause. Instead, he raises the argument that "the damages– specifically the $17,500 transferred to Natasha Gaudin and the subsequent $712,000 in liquidation damages–he suffered were not the result of trades executed within the JPMS Account" and therefore his claims fall outside the scope of the signed contract.[9] Further, Osmanski contends that "selling away" is an independent tort, not a contractual dispute, and "under Louisiana Law a party cannot be compelled to arbitrate a dispute they did not agree to arbitrate."[10] Lastly,

---

[8] Osmanski has not identified any statute or policy that militates against arbitration.

[9] R. Doc. 24, Pl.'s Memo. in Opp., at 1.

[10] *Id.* at 2.

Osmanski states—without citing any authority——that according to Fifth Circuit precedent, "when an employee engages in an independent intentional tort (fraud) that violates the core purpose of the agreement, the corporation cannot retroactively use the breached contract as a shield to hide the misconduct in private arbitration."[11]

The Court rejects these arguments.

Osmanski is correct that parties will only be required to arbitrate any dispute that they have agreed in advance to submit to arbitration. *See Traders' Mart, Inc. v. AOS, Inc.*, 268 So. 3d 420, 427 (La. App. 2 Cir. 2019), *writ denied sub nom. Trader's Mart, Inc. v. AOS, Inc.*, 280 So. 3d 1165 (La. 2019). However, "[a] presumption of arbitrability exists which requires the court to decide in favor of arbitration when 'the scope of an arbitration clause is fairly debatable or reasonably in doubt.'" *Downer v. Siegel*, 489 F.3d 623, 626 (5th Cir. 2007) (quoting *Mar–Len of La., Inc. v. Parsons– Gilbane*, 773 F.2d 633, 635 (5th Cir.1985)). Further, "the weight of this presumption is heavy: arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue." *Id.* (quotation omitted).

The mere fact that Osmanski's claims involve a fraudulent tort committed by a JPMS employee with an outside party, and not a transaction executed within his JPMS account, does not mean that the claims fall outside the scope of the arbitration agreement. The Fifth Circuit in *Downer* addressed a similar situation. Applying the presumption of arbitrability, the Fifth Circuit determined that the broad language of the arbitration clause did not limit its circumstances to those that fell only within the scope of the employee's employment but covered all controversies between the plaintiffs and former or current employees of the brokerage firm and concerning any account

---

[11] *Id.*

maintained by the firm. *See Downer* 489 F.3d 623, 626 ("The presumption of arbitrability dictates that the court find in favor of arbitration because there is an interpretation of the clause which covers the claims in this case"); *see also Hussain*

*v. Garson*, 783 F. Supp. 2d 846, 850 (W.D. La. 2011) ("Given the extremely broad language of the arbitration clause in this matter, the Court concludes that the arbitration agreement is valid and is applicable to Defendant"). A decisive factor in the Fifth Circuit's decision in *Downer* was the fact that the plaintiffs could not maintain their underlying action without discussing the asset management agreement and why the broker oversaw their money. *Downer*, 489 F.3d at 627.

The arbitration clause here, like in *Downer* and *Hussain,* is extremely broad. By signing the account agreements, Osmanski agreed "that *all controversies* arising under *or relating to* this Agreement or *any activity* between [him] or JPMS and its […] employees […] regarding [his] Account(s) including, but not limited to, orders, transactions, performance or breach of other agreements between the parties shall be resolved through arbitration" (emphasis added). Further, Osmanski claims that he only acted on Vappie's advice because he reasonably believed it was a banking solution vetted by Defendants. Therefore, Osmanski cannot maintain his action against Defendants without reference to the account agreements, nor without explaining why he assumed Vappie operated under Defendants' banking expertise; accordingly, his action is covered by the arbitration clause. *See id.*

Osmanski's argument that he did not agree to arbitrate a fraudulent, unapproved scheme also falls short. The Supreme Court has held "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it. But the [Federal Arbitration Act's] statutory language does not permit the federal court to consider claims of fraud in the inducement

of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). Therefore, even if the investment was in fact induced by fraud, the arbitration clause is enforceable unless Osmanski was fraudulently induced into signing the arbitration clause itself—an argument which he does not make.

In a separate motion, Chase Bank has moved the Court to also stay Osmanski's claims against it pending the arbitration between Osmanski and JPMS. The Court has discretion when determining whether to stay any remaining non-arbitrable claims, and a stay will be warranted if: "1) the arbitrated and litigated disputes involved the same operative facts; (2) the claims asserted in the arbitration and litigation were inherently inseparable; and (3) the litigation [has] a critical impact on the arbitration." *Rainier DSC 1, L.L.C. v. Rainier Cap. Mgmt., L.P.*, 828 F.3d 356, 360 (5th Cir. 2016) (quotations omitted).

First, the litigated disputes involve the same operative facts because the allegations do not differentiate between Chase Bank and JPMS. Second, the claims are "inherently inseparable" because the arbitrator will determine whether Vappie was engaged in a "selling away" scheme. Whatever the outcome of arbitration is for JPMS, the consequences will necessarily be the same for Chase Bank. Third, litigation has a critical impact on arbitration. The Court agrees that absent a stay, there is a risk of inconsistent results for the same acts, and that there would be a risk of double recovery. For these reasons, the Court agrees with Chase Bank that the claims against it should be stayed.

Accordingly;

**IT IS ORDERED** that the **Motion to Compel Arbitration and Stay Lawsuit (R. Doc. 21)** filed JPMS; and the **Motion to Stay Lawsuit Pending Arbitration (R. Doc. 22)** filed by Chase Bank are **GRANTED.**

**IT IS FURTHER ORDERED** that this matter is **STAYED AND ADMINISTRATIVELY CLOSED**, pending a final decision by the Arbitration Tribunal. If any issues remain after a final judgment by the Arbitration Tribunal, any party may file a written motion for leave to reopen this matter.

June 10, 2026

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE